## John Henry McLemore v. The State.

No. 8945.     Delivered April 22, 1925.

Manufacturing Intoxicating Liquor—Evidence—Held Sufficient.

Where the evidence disclosed the finding of a still, on appellant's premises, and about two hundred yards from his house, which showed evidence of having been very recently in operation, a fifty gallon barrel of mash some whisky near the still, a path leading directly from his house to the still, which showed recent travel over it, and other facts pointing to his guilt, though circumstantial, were sufficient to justify the jury in his conviction Distinguishing fact cases, Kulberth v. State, 254 S. W. 985, Tolar v. State, 260 S. W. 1043, Woodward v. State, 260 S. W. 184 and Hubnik v. State, 261 S. W. 776.

Appeal from the District Court of Rusk County. Tried below before the Hon. Chas. L. Brachfield, Judge.

Appeal from a conviction for manufacture of intoxicating liquor; penalty, two years in the penitentiary.

The opinion states the case.

*Victor A. Smith,* and *Gray & Gray,* of Henderson, for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

MORROW, Presiding Judge.—The offense is the unlawful manufacture of intoxicating liquor; punishment fixed at confinement in the penitentiary for a period of two years.

Under a search warrant, the home of the appellant was searched by Hayes, the sheriff, and Hargis, a constable. From the testimony of the constable we quote:

"    .    .    .    I know the defendant here, John Henry McLemore. On or about the 9th of June, last year, I saw the defendant at

his home. I made a search around there. We found a still down about two hundred yards south of his house—right back of it—and some whiskey and mash. There was a fifty-gallon barrel of the mash. . . . I will state that the trail went from the house to the well and didn't go anywhere else; the trail was fresh traveled, too. It was traveled after the dew fell on it, and you could see the tracks. Besides the mash, we found some whiskey. The still was first dug in a little drain that came down that way, and this well was dug in the drain, and right down below the well there was the mash, and the furnace had been opened and the still was just a little further over, pitched over under some brush, and the whiskey was picked up part in one place and part in another, and the fire had not gone out good where the furnace was. . . . When we got there, there was a light in the house, . . . and we went and made the search and he got up and his shoes were there and wet with dew. There was dirt all over them, like you wade out in the dew and dirt. . . . This well was about three or four feet from the top to the water; it was just a hole in the ground. There was a ten-quart bucket with a piece of rope on it, and the ground was wet all around, and showed water spilled in the last two or three hours. . . . That well was about two hundred yards south of his house. . . . We searched John Henry's house. We didn't find anything there but some sugar. . . . There was some flour there, too. There was some lard there, and about a hundred pounds of sugar. We did not find any whiskey in the house.''

The testimony of the sheriff was in substance like the above.

The witness Yarborough testified that he worked for the appellant until about five o'clock in the afternoon of the 8th of June.

The appellant's father, Steven McLemore, testified that he had let the appellant have a quantity of sugar for his hands or workmen. William Bryant testified that he had worked for the appellant and had received flour and sugar in payment for his work.

Appellant testified and denied making the whiskey, as well as the ownership of the still. He said that he had worked on the previous day for Chester Yarborough; that upon the following morning he found the officers there; that during the night he had gotten up to give some attention to the children and struck a light; that he had some time before, gotten water at the well near which the still was located but that the well had caved in at the time of the alleged offense, and that he was not using water from it; that he had not used any water in the well for some six months. He explained his possession of the sugar and flour by stating that he used it to pay his workmen.

Appellant insists that the evidence is insufficient, and cites Kulberth v. State, 254 S. W. Rep. 985; Tolar v. State, 260 S. W. Rep.

1043; Woodward v. State, 260 S. W. Rep. 184; Hubnik v. State, 261 S. W. Rep. 778.

In the present case, the circumstances were such as to leave beyond question the manufacture of intoxicating liquor on the premises of the appellant near his dwelling. There were other circumstances which are deemed sufficient to connect him with the commission of the offense. There were no others residing upon the premises; there were no other dwellings in the same proximity. The arrangements for making whiskey were such as to support the inference that they had been recent. There was a path leading from the appellant's dwelling to the place where the still and whiskey were found. At the time of the arrival of the officers late in the night, there was a light in the house. The wet grass upon the path mentioned bore evidence of recent use. There seems to have been a quantity of sugar upon the premises, which is one of the ingredients used in the manufacture of whiskey. The presence of the sugar was explained by the appellant and his father; the light in the house was explained by the testimony of the appellant. The interest of both the appellant and his father was such that the jury were not bound to accept their testimony as true. See Satterwhite v. State, 6 Texas Crim. App. 609; Hawkins v. State, No. 8599, not yet reported. Even if true, however, it leaves unexplained, save by the denial of the appellant, all the other evidence to which we have adverted, and which is deemed sufficient to support the conclusion of the jury that the equipment was in possession of the appellant or had been used by him. The precedents cited are not deemed in conflict with this holding. Kulberth's case, supra, was one in which the State relied alone upon the confession of the accused to prove the corpus delicti. Tolar's case, supra, was decided upon the weakness of the State's case in that there was an absence of proof that intoxicating liquor had been manufactured. Woodward's case supra, is distinguishable in that the res gestæ explanation of the incriminating circumstances was introduced by the State and the truth thereof was not disproved. When the State introduces exculpatory evidence justifying an acquittal, the record must disprove the exculpatory facts. Otherwise an acquittal should follow. Woodward explained his possession of a small quantity of whiskey and named witnesses by whom his statement could be verified. These witnesses, available to the State, were not produced. In Hubnik's case, supra, there was a failure upon the part of the State of prove that the still had been used or that whiskey had been manufactured. The appliances found in his possession were not sufficient to make whiskey. It was held that Hubnik's possession of a pint of whiskey was not so inconsistent with his innocence, when taken in connection with the other evidence, as to warrant a conviction. The State's evidence

went no further than to suggest that he had prepared to make whiskey. No other question is presented for review.

The judgment is affirmed.

*Affirmed.*